Good morning, your honors. My name is Kent Robison. I represent the defendants' appellants. We're asking this honorable court to remand to the district court this case so that an evidentiary hearing can be held to determine whether my clients executed a settlement agreement, including an indemnification provision, because they were fraudulently induced to do so. We respond to that. You were fraudulently induced to enter the entire contract? No, sir. So how can you never, never contended that? You were fraudulently induced to agree to a contract that had an indemnity clause. There are two provisions specifically, sir. And there are paragraph 1.9 and paragraph 3.2. And the factual events that occurred one month to six weeks prior to the execution of that contract are crucial. So what you're saying, though, but aren't you what you're really saying is that had you known the truth, you never would have entered that contract with those provisions? We would not have agreed to indemnify Montreaux for the Newtson claim. That would have been the best Well, you wouldn't have Well, that doesn't necessarily mean that there would not have been a contract. They would have said we want these indemnity provisions. Well, maybe that would have resulted in there not being a settlement contract. Let me ask you this. How can you invalidate just Just these two provisions. Very simple. Because Nevada law allows that. Under Epperson v. Roloff, the buyer of the house was fraudulently induced to buy the house on representations that had a solar heating system that was efficient. It wasn't efficient. In fact, it leaked. And in that case, the buyer sued for damages on that misrepresentation. The buyer didn't have to give the house back. The buyer got to keep the house. The buyer got to keep the benefit of that bargain. But even though the buyer signed an integration clause contract that says you can't rely on prior representations of the other party, the Nevada Supreme Court says, the California courts say, and this Court has said, because you challenge that one provision doesn't mean that you have to give up your rights on the contract. And Blanchard v. Blanchard says exactly that, a Nevada Supreme Court case. Epperson v. Roloff, which relies in part on the Herzog case, a California decision discussed at length in Ron Greenspan-Volkswagen v. Ford Motor Company, which challenged the Fisher decision, which was in part the basis for the city equities case. So, sir, the answer is very simple. Nevada law very expressly permits that very alternative. Because this particular settlement had 13 parties. It resolved seven different legal proceedings. It wasn't just Spree and Dr. Pitts and Montreux and Toyobe. It had multiple facets. In this case, one month before that global settlement agreement was signed, my client got a written contract from Montreux that said there is no obligation by Montreux to Dr. Knutson. And that contract is signed by Montreux. And they said in a signed document, page 204 of the excerpts of the record, there is no obligation to Knutson. The record seems to suggest, though, within fairly short order after that, your client at least was alerted that that may not have been so, and then waited. I certainly know of no evidence that my client was alerted that that's not the case. In fact, what my client did through his attorneys is contacted Dr. Knutson's lawyer. And Dr. Knutson's lawyer says, don't worry about it. Montreux's obligation to Dr. Knutson is taken care of. We've worked that out. It's done. There was no communication from Montreux at all to Dr. Knutson's outstanding obligation to Dr. Knutson. In fact, there was declarations just the opposite. We had signed an agreement in the bankruptcy court. Dr. Pitts and Spree had signed a settlement agreement. And that agreement was signed by Dr. Knutson and by Dr. Simpson. And those three parties agreed that Knutson got the lot from Dr. Simpson. Now, one of the mistakes that were made back then was that there wasn't a follow-up to determine whether or not Montreux ever signed that document, which they did not, and then later contended they were not bound by that settlement, even though they were in open court when it was put on the record between Dr. Simpson and Dr. Knutson, where Dr. Simpson's lawyer says, Dr. Knutson gets the lot. And there's an issue about double payment, and that's resolved. There's no double payment. Dr. Knutson gets the lot. What's behind all this is where's the lot now? It was to be Dr. Simpson's who assigned his rights to Dr. Knutson. Dr. Simpson doesn't have the lot. Dr. Knutson doesn't have the lot. Montreux has the lot. I want to go back to the point about when your client first realized that there had been what you allege is some fraud in the inducement, the district court was troubled by that, because I read the ruling, and the district judge said it's significant that the defendants didn't return to this court for two years to assert the fraud inducement claim. Excellent. Excellent question. The answer is there was pending in the year 2000 a Knutson v. Spree case about Lot 5. We had in our hand, Your Honor, the settlement agreement signed by Simpson that he gave the lot to Knutson. Signed by Simpson, signed by Knutson, that case was dead. That case was over. We had a settlement agreement. Because in the bankruptcy court, the bankruptcy settlement agreement signed by Simpson and Knutson said, here, Knutson, you get the lot. That's what we knew of the two years of litigation that the district court refers to. That case was basically settled. And if you read that state court case, it's gone. It's resolved. But it was predicated on Knutson getting the lot. He didn't get it. He didn't get it. You know, Simpson never raised the double payment argument. After my client sees a settlement agreement where the lot's going to go from Simpson to Knutson, after my client gets a signed contract from Montreux saying it has no obligation to Knutson, he then signs the indemnification provision. Spree recognizes that there's no obligation by Montreux to Knutson. We had a signed document saying there wasn't. Why wouldn't we agree to that? We had a settlement agreement put on the record. To back up just for a moment. I'm sorry, sir. I think we're fairly cognizant of the facts. But let me ask you this. Let's assume for the sake of argument, you've got an indemnification clause. Everybody assures you there's no action. But a frivolous action is filed. A completely frivolous action. Do you think you need to, under those circumstances, would your client be required to indemnify and defend, even though the action was completely frivolous? If the action by Knutson Let's just say there's a hypothetical. Hypothetical. My question is the scope of how you view the indemnity clause. The indemnity clause is enforceable if Dr. Pockroy came forward, frivolous or substantial. The indemnification clause is enforceable and valid as to Dr. Turnian or any of the other doctors that were involved in what we know as the HCP lots. Yes. Because there was no fraud. There was no direct representation concerning those other claims. Whether they be frivolous or subpoenaed. Right. But you have no reason to suspect that there are any other claims for any of those other people either, right? No. They were all resolved. We knew that. Well, see, that's the point. If they brought a frivolous claim now, you would honor the indemnification agreement, right? And that, of course, assumes that there was no misrepresentation by anybody about those claims. Yes. Absolutely. And I do believe, so I think I could How is that analytically any different from a case where you have reasonable assurance that you think that there aren't any claims, but you agree independently to indemnify regardless of whether the claims are frivolous or not? Because Montreux has promised us in writing that Dr. Knutson doesn't have a claim. Has promised us in writing. They changed paragraph 8 of that settlement agreement. Right. But I guess my point is somewhat different. At least as to defending the claim, perhaps not as to indemnification, but as to defending the claim, you agreed to defend that whether or not there was a justifiable claim or not, right? Sure. Absolutely. So why don't you have the obligation to defend it at this juncture? Because this provision was procured by fraud. Why would we not be able to sue for the defect of solar heating? The Nevada law says that the integration clause is unenforceable if it were procured by fraud and that the victim of those false representations can stand on the contract and can pursue his or her rights on the tort, on the fraudulent misrepresentation. Why would we not defend? We would not defend against the Knutson claim because we were told by Montreux that there was no claim, that it was taken care of, that it had been involved in a settlement proceeding in the bankruptcy court. And there are certain arguments can be made that that defense waives the right perhaps to challenge the fraudulent equipment aspect if it's a multifaceted decision at that time whether to accept the defense. Dr. Knutson, two months later, after the settlement agreement is signed, then amends his complaint to say, I'm going to go after Montreux. And I'm going to get that lot from Montreux. I'm going to get the value, the $243,000 value from Montreux. We are then given the notice from Montreux. We're getting dragged into this thing. You promised to defend us. You promised to indemnify us. We're tendering the defense to you. And we said, no, we're not going to do that. When that amendment was granted, Montreux sued in state court to have the settlement agreement interpreted and enforced in state court. For two years, discovery went on in state court where Montreux was asking the state court to interpret and enforce the settlement agreement. Within 60 days before trial, apparently not liking the lay of the land, Montreux then moved for federal court exclusive jurisdiction over the settlement agreement. And when we oppose that, we attempted to show the district court that this is being hotly litigated in the state court. The forum that Montreux chose to interpret and enforce the settlement agreement and has asked for a declaratory judgment that they're entitled to indemnification against us, also pending in the state court, of course, was this very claim that I'm arguing to this court, that that indemnification provision was procured by fraud. District court has jurisdiction. District court said it has exclusive jurisdiction, therefore, there cannot be waiver by Montreux for prosecuting that claim in state court for two years. Now, your fraud claim, said the district court, is not valid because you waited two years to come to this court. We didn't select state court. They did. They selected the state court to adjudicate their rights to enforce and interpret that settlement contract. Could we have filed a motion? Sure, we could have. But we filed instead cross claims and third-party complaints against Montreux in a state court proceeding. And they said, fine, we'll litigate it here. They filed their replies. They filed their We set it for trial. We're working on our trial statement. We're working on opening statement two years ago today. Then the district court said, well, what about the $9.5 million that you get? Well, we have some real issues with that number. It's been a very effective number, but it's not a correct number. And we said to the district court, Epperson, Herzog, these cases allow you to challenge that specific provision. That's Nevada law. And they don't exactly allow you to challenge the provision. What they allow you to do is to file a separate suit for damages after you've been damaged. Well, that's correct. They don't say, for example, that you can refuse to perform your contract. They say you can get damages, right? What you're asking, what you asked the district court to do was to rescind part of a contract. You didn't say we defended Montreux and we're suing for damages because they misrepresented this. And here's our damages, our damages for defense, the amount we had to pay. Well, we did. What you are doing is you're saying, I want this part of the contract voided. And there's a difference between tort damages and a contract rescission remedy. Wouldn't you agree? Oh, absolutely. Absolutely. I would agree. And Montreux has cited the DeVos decision in Nevada, which says very clearly, and I think it's Hornbook law, you can't rescind the contract and get damages. You can have either. This is a fraud in the procurement claim, much like the cases that this court has decided in Russell and in Cali and in Artura, in which those challenges resulted in an evidentiary hearing. Now, we are not saying that we are carving out a burden. We are saying that that's a $243,000 damage claim. Well, the district court is not going to litigate that, allow you to litigate that in this enforcement proceeding. The effect of a decision will be to litigate that. Is he going to award his damages? Is he going to void these provisions? The question for him is, should this settlement agreement be enforced? Correct. Right? There are no cross claims or counter claims. Should this settlement agreement be enforced? Well, you can argue to the district court judge it shouldn't be enforced because there was fraud involved in the procurement of it. And if he agrees, if the district court judge agrees with you, he may say, okay, I'm not going to enforce this settlement agreement. Go away. That's the tort plan. No, I'm talking about enforcement. I understand. I'm talking about enforcement of the settlement agreement. I understand. Because that's all this before the district court. No. See, that's one of the – well, let me ask you this. What would be the basis or the right to file in this enforcement proceeding counter claims in the district court – when all that's at issue here is, should the district court enforce this settlement agreement? Well, I understand where you're coming from, and, yes, you're right. The fraud in the inducement part of our claim pertains to the enforceability of those two provisions. I'm just equivocating because there's a contract claim that was simply taken off the charts. We don't know where it went. Well, if the district court were to say, I'm not going to enforce this, I'm not enforcing this agreement, it would seem to me that that's what you're back in state court with all your fighting. Well, but the court has enjoined the state court. Well, I would assume that if the district court said, I'm not enforcing this agreement, he would allow the proceedings to go forward in state court. I don't necessarily believe that to be his only choice, his only alternative. Well, wasn't the district court's jurisdiction limited by the reservation of jurisdiction, which was simply to enforce the agreement? Yes. No, that's not true. Excuse me. I misspoke. It's to retain jurisdiction over any dispute whatsoever about this settlement agreement. For example, Montreaux withheld a million five of payments to my clients. They did so because they said, Montreaux, we don't want to get involved in your disputes, Dr. Pitts, and spree with these other doctors, so we're going to withhold one five, a million five. So they interpled that into court and we had to go to court to get that back out. We pled that as a breach of contract claim. Now, it's different than the fraud and the inducement claim, but yes, would the district court have jurisdiction over that breach of contract? I think so, yes. So it's broader than just enforceability. So if you asked the district court if he could file sort of a counterclaim? Yes, sir. Yes, sir. What did the district court do? Here's the scenario. We said in our opposition, we have this raging war going on in state court, and if you want to exercise your exclusive jurisdiction, would you consider allowing us to prosecute the attached complaint? That complaint set forth the facts of the fraud. That complaint set forth the facts of the breach of contract, and it had four claims for relief, fraud, fraudulent concealment, negligent misrepresentation, and breach of contract. And the district court said, well, that's a ruse. And we said, well, could you reconsider that? And we're going to file a motion to invoke your jurisdiction with our motion for reconsideration. And with the motion to invoke the court's jurisdiction, we laid out all the evidence, 34 exhibits attached to that, the signed agreements, the affidavits from the attorneys involved. We said, we have a big fight here, and we'd like you to invoke your jurisdiction on an evidentiary hearing, a jury trial, or a court trial. We don't care. We just want to be heard on these issues. And the court said, you're just rehashing old stuff, denied. And didn't look at the kind of factual controversy that Russell and Calley and Arturo say, these are suited for an evidentiary hearing. And we have an affidavit from Dr. Pitt saying, I was told there was no obligation to Dr. Knutson. We have an affidavit from Mr. Nichols, a Montreux representative, saying, oh, I just put in that to satisfy Dr. Pitt's, because he wanted to avoid the appearance that there was a debt. And then Dr. Pitt filed an affidavit in reply that was replete with intense facts and disputes about how that document got signed and where it came from. And so the district court, to answer your question a little shorter, was very well aware of the fact that we had these claims. And we asked the court to invoke its jurisdiction and have an evidentiary hearing. Thank you. Thank you, counsel. We'll hear from Sarah Pines, or from Montreux, sorry. May it please the court, Michael Pagni on behalf of Montreux Joint Venture and Toyabe. With me in the courtroom is Pat Lenball. Pat was the exclusive counsel for Montreux, both in the years leading up to the settlement and in the years after the settlement agreement was entered. No evidentiary hearing was warranted in this case because there was no material, factual dispute of a viable fraud claim. SPRE submitted no evidence whatsoever at the original hearing to show that there was fraud, no affidavits, no documents, no testimony, just arguments of counsel. That's not enough to create a factual dispute at the outset. But even if they had submitted evidence that they submitted in their motion for reconsideration, and even if you were to accept that evidence is true, that Montreux said Knutson had no claims to indemnify, as a matter of law, their fraud claim is not viable. It does not create a triable issue of fraud because, one, had the statement been made, they knew it was false. They knew Knutson had claims. It was the subject of pending litigation. Two, even if the statement had been made, it's directly contradicted by the terms of the written agreement. You can't say you're relying on an oral statement that says there's no claims to indemnify when you turn around in writing specifically agree to indemnify Montreux for those claims by Knutson. Three, as pointed out by Your Honor, their claim is belied by their dilatory conduct. They knew by their own admission within days of signing the settlement agreement that Knutson had claims, if you accept their allegations as true. Well, you've got to ask yourself, if you knew within days that Knutson had claims, why not run to court right then before any party performs anything under the settlement agreement and ask that it be rescinded? That's what happened in Russell. That's what a reasonable party would do. Instead, they did nothing. Why not a few weeks after that, when we're back in front of the court at the interpleader hearing, asking the court to interplead the funds that were required to pay under the enforcement agreement, when the court turns to them and says, Montreux, you have a rock-solid claim for indemnity? And if Knutson drags you into court, all you've got to do is hand your case over to Spree and say, you now represent Montreux also. Why not stand up then and say, whoa, whoa, wait a sec. There was fraud, Your Honor. We didn't know Knutson had claims. They never did that. Why not when Knutson subsequently amends the State court action to name Montreux specifically, don't they run to court and complain about fraud? Why not when we demand that they indemnify us? They never did anything until, conveniently, years later, after we're drug into the State court action, we're forced to defend ourselves because they won't, forced to defend ourselves against counterclaims by them. We prevail on those claims. We turn to them and say, okay, indemnify us. We go to the district court and ask that that happen. Now, all of a sudden, they come up with a theory of fraud. Has the district court recognized it's just not credible? That's this case in a nutshell. Let me back up and I'll get to it in more detail. This is a complex case. It was a complex settlement agreement involving 22 different parties, resolved seven separate pieces of litigation. It was negotiated over several months. These were sophisticated parties. They were represented by counsel. And the Knutson indemnity claim was right at the heart of this agreement. Everybody knew Knutson had a claim. This isn't something that, you know, flew under the radar and only came up after the fact. Everybody knew about it. It was the subject of pending litigation. It was a central issue for Montreux in the settlement negotiations. We wanted to be done with this. That was the consideration we wanted. Simpson, our former partner, had created a whole bunch of problems for us, and we just wanted to be done. We were willing to pay a price, a pretty high price, $9.5 million, but we just wanted peace of mind and we wanted to be done forever and always. That was the heart of the settlement, and that's exactly what we got. There was no surprises there. That's exactly why we named specifically Knutson in the settlement agreement and demanded that they indemnify us for those claims. Now, years later, after they've accepted all the benefits under the settlement agreement, the $9.5 million in cash and property, after lawsuits have been dismissed, statutes of limitation arguably run, parties have proceeded in reliance that the settlement agreement is valid and enforceable. Now, years later, when they're finally called upon to perform what they're required to do, they balk. As the district court recognized, it simply isn't credible. That's not my characterization. That's the district court's. You want to get an idea, a flavor for this case and what's really going on? Look no further than the district court opinion. This is the supervisor of litigation. This is the tribunal that is most familiar with the facts. The case, the parties, their counsel, it's on the ground floor. Look at its opinion. It characterizes their claims as, quote, incredulous at best. As, quote, lacking in credulity. And as, quote, a ruse perpetrated merely for the purpose of delay. That speaks volumes. The rule of law is correctly stated in city equities. Some reinforcement is proper in all cases except for limited circumstances where there is a material dispute of fact related to a claim, a viable claim for fraud, and I would submit to you that you have no such claim in this case. As I stated, no evidence of fraud was submitted to the district court. Compare this with Russell. Russell, you have a case where not only is evidence offered in the form of affidavits, there's irrefutable video evidence of the fraud. That was a case where somebody said he couldn't lift his arm and they have the video evidence. Yeah, he actually did. That's irrefutable evidence. And also compare the conduct of Russell. It goes to the point of dilatory conduct. Russell runs to court within days of learning of this alleged fraud and demands the contract be rescinded. You don't have that in this case. And the credibility of their claim is belied by the remedy they seek. You brought up a good point, Your Honor. They're not seeking to rescind the contract. They want to rescind parts. They want to keep the $9.5 million. They want to keep the benefit of us having dismissed all the litigation against them. They just want to carve out two sections, 1.9 and 3.2, because that's the one that we've come to ask them to indemnify us for. Under Nevada law, you have an option. In cases of fraud, you either affirm the agreement in its entirety and sue for damages, or you rescind it in its entirety. You can't do both. That's what the Bergstrom case that we've cited states. The remedy they're seeking is one that you can't get under Nevada law. They've never offered to return the money to us, and the district court recognized this. And it recognized that it speaks to the credibility of their claim. The remedy they seek just can't be granted. As I said earlier, as a matter of law, even if you were to assume their allegation is true, and accept it's true, their allegation that Newtson, Montrose said, Newtson has no claims to indemnify. There is no tribal issue of fact to warrant an evidentiary hearing. I haven't looked at the excerpts of record in a few days. But could you just clarify for me that what actually was filed in response to your motion to enforce by the defendants? An opposition. What was it? Was it an argument or? Argument. There were no affidavits, no documents, no testimonies proffered. All of that evidence that you see in the record came in on the motion for reconsideration. All that was offered to the district court at the time of the original hearing was arguments of counsel. On the other hand, our motion included affidavits. So there was evidence submitted with our motion. And I submit to you, you cannot create a factual dispute by merely raising arguments to controvert admissible evidence. Did they lay out their theory of fraud? Yes, they did. And the district court, as recognized in the decision, found that it just wasn't credible for the reasons I've stated. Because the district court was aware of the pending state law cases. It knew Newtson had sued Spree for claims to the lot. It knew Spree had turned around and sued us, claiming that we were actually the ones ultimately responsible. And it knew both lawsuits were pending at the time the settlement was entered. This is a critical fact. Think about this. They're in the midst of litigation with Newtson, fighting Newtson over his claim to the lot. They've turned around and sued us, saying, actually, we're the ones responsible for that claim. Both the suits are pending when they sign the settlement agreement. And now they're coming back years later and saying, well, gosh, I didn't know Newtson had a claim. It's just not credible. And the district court specifically references that third-party complaint in its order. Can you tell me, under Nevada law, whether the Nevada courts enforce agreements to indemnify a person against their own wrongdoing? I can't answer that question specifically. But I would submit to you that in this case, what we have is, one, we're adamant that we never told them Newtson's claims were taken care of, and we knew those claims existed. Moreover, if you look at the facts and circumstances of this case, not only did they know the statement was false, but look at the agreement itself. It evidences an intention of the parties that, one, they intended to release us from everything under the sun, including known and concealed claims. And I bring that up because that's an important distinction between the wrong greenspan case that they rely on and city equities. What it evidences is the intention of the parties that I've done my homework, I've done my due diligence, I've conducted an investigation into this matter, and I know that this is a good deal. Even if you're misrepresenting something to me, even if you're hiding something from me, that's okay. I'm getting $9.5 million, and I accept and I assume the risk of something being out there that I don't know. There are Nevada cases that speak to this point, Epperson, that says where a party makes an independent investigation, it is, quote, deemed to have relied on its own judgment and not a defendant's representations. Again, that clause is important because what it's saying is I've conducted my own investigation. And under Nevada law, if you've done that as a matter of law, you cannot be deemed reasonably to have relied on the representation of the other party. Also important is Collins. This is 741p2 at page 821. This says that a party has an affirmative duty to conduct an investigation when it has, quote, information which would serve as a danger signal and red light to any normal person. That's exactly the circumstance that you have in this case. They know they're being sued by Knutson. We can't settle Knutson's case. It's between them and Knutson. A reasonable person has a duty to investigate that further. Knutson, if you're really dismissing this, where's your stipulation of dismissal? Let me see something in writing that this thing's gone. Now, they've relied heavily on this settlement agreement in the Knutson bankruptcy case. But I point out to you, that was not approved and finalized until September 2001, after our settlement agreement was approved. And while it was initially introduced to the bankruptcy court in 99, its enforceability was conditional upon all four parties agreeing to it. Montreux never signed off. And there's findings, in fact, in the record from the bankruptcy court, Judge Zive, that make this clear. We were never a party to that agreement. We're not bound by it in any way. So their argument that, well, we had this written agreement, you know, fine. But Montreux never signed it. A reasonable person would say why. A reasonable person would conduct further investigation. City equities is on point. City equities is similar to this case. You have a party alleging fraud in the inducement. At the end of the day, you have a district court who says, you know what, that claim just isn't credible. The mere allegation of fraud in and of itself is not sufficient to warrant an evidentiary hearing. You need to have more.  You've got to have a material dispute of fact. And it has to relate to a viable fraud claim. In this case, they lacked both. They've tried to distinguish city equities by arguing that Ron Greenspan has changed the rule of law because Ron Greenspan overturned Fisher. I would submit to you Ron Greenspan is distinguishable. Ron Greenspan has been limited by subsequent cases to cases of fraud in fact. It does not apply to promissory fraud. And I would refer you to Sanguinetti v. ViewLogic, 1996 Westlaw 33967. Basically what this case stands for is that promissory fraud is defined as a collateral promise which directly contradicts the oral agreement. And in those cases, an integration clause can in fact bar causes of action for promissory fraud. And that's exactly what you have here. The oral assurance is that Newson has no claims to indemnify. The written agreement specifically says you assume all obligations to Newson and you agree to indemnify him from those. It's directly contradicted. That's a case of promissory fraud. Promissory fraud is not involved in Ron Greenspan. There's no claim of promissory fraud in Blanchard, nor is there one in Habas. These are the only cases, the primary cases they rely upon, and all of them are distinguishable. Blanchard is also distinguishable because in that case, the alleged fraud or the alleged oral statement was specifically included in the written agreement. In Blanchard, the parties said in writing, I'm relying on your oral representation that there's no other property out there. So when the oral representation turned out to be false and they sued, the fraud they're suing on was actually a fraud in the written agreement as well. That's completely distinguishable from the case you have here. Also in Blanchard, you don't have circumstances like you do here where they knew, had that statement been made, they knew it was false. You don't have statements here where you have the dilatory conduct that you see in this case. You don't have a circumstance where you have a broad release clause like you did in city equities. Habas is also distinguishable, which they rely upon. Habas, you've got a car dealer who agrees I'll sell you a car for $4,100, has the lady sign a blank purchase agreement, and then goes back in his office and fills in a different dollar amount. That's fraud in fact. And it also brings up a question of the existence or terms of the agreement. Again, completely distinguishable from the facts in this case. Submit to you that this case is even stronger than city equities for all the reasons I've just stated, including the dilatory conduct. And I would refer you to Wilson v. Wilson, 46F3-660. This is a Seventh Circuit case which recognizes that a party is stopped from challenging a settlement agreement if they fail to timely raise it at their first available opportunity. Clearly they failed to do that in this case. I would ask you, as you're looking at this case, to also consider the policy underlying settlement agreements, the policy of finality. Parties have to know, especially when you're talking about contentious, complex litigation like this one, they have to know when they sign a settlement agreement, it means what it says. And if the other party is saying I will indemnify you for claims from Knutson, then that's exactly what they're required to do. And if they say I'm not relying on any oral representation signing this settlement agreement, then they can't come back later and change their mind and say, yeah, they were. And now when they agree to release you from every claim under the sun, including concealed and unknown claims, that that's exactly what's released. To now allow someone to come back years later and try to disavow a clear and unambiguous settlement agreement simply because they've had a change of heart or because, you know, the latest counsel has a new theory of fraud simply isn't credible. The district court did not abuse its discretion. No evidentiary hearing was warranted because there was no evidence of fraud. And even if you accept as true their allegation, there's no viable claim for fraud. It would have been an unnecessary and useless exercise which would have resulted in the exact same conclusion. The district court, which you say was at the ground floor, knew the parties, knew the counsel, determined that at the end of the day, after denying the relief the defendants were seeking or even a hearing on that, that the attorney's fees submitted by your side were too high and determined that they ought to be $132,000 rather than the $189,000 based on district court's knowledge of the case and the complexities. But you have crossed the field and claimed that that determination was wrong. I have. And I think the distinction being is because we were drug in the state court, there was a lot of litigation in front of the state court that the district court, while being aware of the litigation, wasn't aware of the extended nature of the disputes that we had to get involved in, the discovery, the change of counsel that kept coming in and out that required more motions. There was a lot more activity at the state court level that would have been required normally. I mean, we recognize the district court's comment, but we think it was an error not to at least recognize that we were forced to incur those higher fees because of the conduct at the state court level. Kennedy. Was that set forth in your declaration or your application for attorney's fees to the district court, that you incurred these expenses in state court? Yes, I believe it was. If the Court has no further questions. Thank you for your argument. Thank you. I think I heard a question about is there any Nevada law on whether the indemnitor can recover for its own misconduct?  Sir, we supplemented the record on January 26, 2004, and we cite a case answering that question, Transamerica Premier Insurance v. Nelson, 878 Pacific, second 314, and they cannot. The argument that there was litigation pending is a straw man argument. The settlement agreement that Simpson, Knutson, and Spree signed in the bankruptcy court extinguished Knutson's claims. That is in second recital, page 184 of the record. That was the status of the litigation when, in June of 2000, the global settlement agreement was signed. And finally, we attached a transcript of the state court proceedings in our motion for an evidentiary hearing. The transcript includes the argument of Steve Molleth, counsel for Dr. Knutson, to the state court. And in that argument, he says he was lied to. He says that Montreaux promised to give his client the lot, or the value of the lot. And he said that he was duped, and he said that he was snookered, and that he relied on those representations from Montreaux's counsel when he told Dr. Pitts's attorney that there was no obligation. Three officers of the court in Nevada have told the underlying district court through affidavits that they were the victim of fraudulent misrepresentations. And what I hear Montreaux say today is there's no evidence of fraud, despite the fact that all these affidavits are clear evidence of a fraudulent inducement. Why didn't you file all that evidentiary material in opposition to the motion to enforce? Well, I overestimated the fact that this was set for trial within five weeks in state court. Clearly, bad judgment on my part. We opposed it. We said, Judge, there is this raging conflict in state court where we're accusing Montreaux of fraud and inducement, and here are the pleadings, and here is the pleading we'd like to transfer to the federal court if you exercise your exclusive jurisdiction. And in the exhibits that were attached to Montreaux's motion, there was the letters exchanged between counsel accusing each other of misconduct and fraud. And the brief from Montreaux outlined an argument saying, we've been accused of fraud in the state court and fraudulent inducement. The motion to enforce, the opposition and the reply laid out everything in summary fashion that was later verified by the exhibits that were attached to our motion to invoke the jurisdiction, sir. Okay. Thank you, counsel. Thank you, Your Honor. The case just heard will be submitted. We'll proceed to the argument on the last case on the oral argument calendar, which is Verdict on Nye v. Ashcroft.
judges: Thomas, Paez, Burns